IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77662-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHRISTOPHER RONNELL AUSLER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: April 22, 2019 |

HAZELRIGG-HERNANDEZ, J. — In order to prevail on a claim of prosecutorial misconduct, a defendant must show that the conduct was improper and that it resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Finding no prejudice likely to affect the jury's verdict, we affirm the judgment of the trial court.

## FACTS

Christopher R. Ausler opened multiple accounts with Pitney Bowes, a company that manages postage meters for the United States Postal Service. Pitney Bowes generally offers a line of credit along with the postage meters for customers to print postage. Customers who no longer need printed postage are able to take it to the post office for a partial refund. Ausler printed postage from his various accounts and received refunds from post offices throughout King County. He did not repay Pitney Bowes.

The postmaster at the Seahurst-Burien post office, Linda Burton, became suspicious when Ausler came in for a refund because the postage was for large, unusual

amounts. Ausler was also recognized by post office staff as having previously conducted similar transactions at that location. Burton notified Ausler's employer regarding the unusual postage refund request because information on the refund form referenced the company's name and location in Kent. After an investigation, Carol Hayes, the executive director for Ausler's employer, met with Ausler and terminated his employment. Hayes testified regarding her conversation with Ausler.

Ausler was also investigated by United States Postal Inspector John Wiegand. Wiegand testified that he interviewed Ausler twice. He offered to show several postal refund forms, postal money order receipts, and spoiled postage to Ausler at the second interview. Ausler declined to look at the documents.

Ausler was charged with one count of first degree theft in King County Superior Court, with a major economic offense aggravator. In its closing statement, the prosecutor argued that "[y]ou have to have a reason to have reasonable doubt. . . you have to be able to articulate what it is." He argued that in his meeting with Hayes regarding her investigation, Ausler didn't say ". . .what the heck? I don't know anything about that. I never ordered any." Regarding the documents Wiegand brought to show Ausler, the prosecutor asked the jury to imagine themselves in Ausler's position and consider if they would want to see them.

Ausler objected to those arguments at trial, and contends on appeal that the misconduct in those arguments, either individually or cumulatively, entitles him to a new trial.

2

DISCUSSION

I.    Misconduct in Closing Argument

"A claim of prosecutorial misconduct requires the defendant to show both that the prosecutor made improper statements and that those statements caused prejudice." State v. Lindsay, 180 Wn.2d 423, 440, 326 P.3d 125 (2014). "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012) (citing State v. Anderson, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009)). If the defendant fails to object or request a curative instruction, the misconduct is waived unless an instruction could not have cured the resulting prejudice. Lindsay, 180 Wn.2d at 430 (citing State v. Stenson, 132 Wn.2d 688, 719, 940 P.2d 1239 (1997)).

Ausler argues that the prosecutor's remarks during closing argument constitute misconduct and denied him a fair trial. The State argues that Ausler has waived review of this issue because he did not request a curative instruction or a mistrial. While some Supreme Court opinions use the word "waive," it is clear that rather than precluding review, a failure to request those remedies changes the standard the court uses to evaluate prejudice. See, e.g., Emery, 174 Wn.2d at 762 (analyzing misconduct despite defendant's failure to even object).

Here, Ausler's challenge fails regardless of the prejudice standard we apply.

A.    Reasonable Doubt

"Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct." Lindsay, 180

Wn.2d at 434 (citing State v. Gregory, 158 Wn.2d 759, 859-60, 147 P.3d 1201 (2006). Arguments requiring the jury to articulate its reasonable doubt are improper because they subtly shift the burden to the defense. Emery, 174 Wn.2d at 759-60.

Here, Ausler argues that two statements made by the State in closing argument constitute reversible misconduct. We hold that the first statement, "[y]ou have to have a reason to have reasonable doubt," is a rough restatement of the pattern jury instruction definition of reasonable doubt, and therefore not an improper argument. See WPIC 4.01 ("A reasonable doubt is one for which a reason exists."). The State concedes that the prosecutor's second argument requiring the jury to articulate a reason for reasonable doubt is improper. It argues instead that Ausler's objection to that argument was sustained and Ausler failed to request any additional remedy. The State argues that Ausler was not prejudiced because the court sustained his objection and properly instructed the jury on reasonable doubt. We agree.

The Supreme Court has considered very similar misconduct and held that any resulting prejudice was curable with a proper instruction. See Emery, 174 Wn.2d at 763-64 (argument requiring jury to fill-in-the-blank to have reasonable doubt was curable with proper instruction). Here, Ausler timely objected and his objection was sustained by the trial court. The prosecutor did not restate the improper argument or skirt the court's ruling. The jury was properly instructed on reasonable doubt, and it is unlikely that the argument affected the jury's verdict in light of the proper instructions and sustained objection. We do not find the requisite prejudice to remand this case for retrial.

4

B.    Right to Silence

Ausler argues that the State improperly shifted the burden of proof and commented on his silence when the prosecutor commented on the statements Ausler did and did not make in an interview with Carol Hayes, Ausler's former employer. However, the Fifth Amendment does not normally apply to interactions with non-state actors. Colorado v. Connelly, 479 U.S. 157, 165, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). Article I, §9 is interpreted equivalently with the Fifth Amendment. State v. Easter, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996) (citing State v. Earls, 116 Wn.2d 364, 375-76, 805 P.2d 211 (1991)). Because Carol Hayes was not acting in any capacity for the state, Ausler's silence in her interview was not protected by the Fifth Amendment or Article I, §9.

Additionally, when a defendant does not remain silent, "the [S]tate may comment on what he does not say." State v. Clark, 143 Wn.2d 731, 765, 24 P.3d 1006 (2001) (emphasis in original) (citing State v. Young, 89 Wn.2d 613, 621, 574 P.2d 1171 (1978). Ausler actively participated in the interview with Carol Hayes. The prosecutor's argument asking the jury to consider what Ausler did and did not say in that interview with a non-state actor was proper.

C.    Passion and Prejudice

Next, Ausler argues that the State improperly appealed to the jury's passion and prejudice by asking the jury to imagine themselves in Ausler's position when he was approached by postal investigators at his work. His timely objection was sustained by the trial court based on the "golden rule." In civil cases, the so-called "golden rule" holds that arguments "urging the jurors to place themselves in the position of one of the parties to the litigation, or to grant a party the recovery they would wish themselves if they were in

the same position" are improper. Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 139, 750 P.2d 1257 (1988) (citing J.Stein, Closing Argument §60, at 159 (1985). The argument is "improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." Adkins, 110 Wn.2d at 139 (quoting Rojas v. Richardson, 703 F.2d 186, 191 (5th Cir. 1983)). The Supreme Court has not adopted the "golden rule" for criminal cases, and instead suggests that these arguments are more appropriately considered as appeals to the sympathy or passions of the jury. State v. Borboa, 157 Wn.2d 108, 124, n. 5, 135 P.3d 469 (2006).

Here, it is not clear that the prosecutor's argument was an appeal to the jury's personal interest, bias, sympathy, or passions. We disapprove of the way the argument is framed because it asks the jurors to depart from an objective evaluation of the evidence, but this argument is more innocuous than inflammatory. It asks the jury only to evaluate Ausler's reaction to the postal investigators and the documents they offered to show him. It was fair for the prosecutor to comment on Ausler's reactions during the interview with the postal investigators. The argument does not ask the jurors to decide based on their own personal interests, attribute any malice to Ausler, or ask the jury to step into the shoes of a victim. Because the argument was on a proper subject and did not invite the jury to apply its passions or prejudices, we hold that the argument was not improper, even if it was unfortunately framed.

D.    Cumulative Error

Ausler finally argues cumulative error based on the various assertions of prosecutorial misconduct. While we do find error as to Ausler's first claim, we do not as to the second and third issues. As such, we do not find cumulative error.

Affirmed.

WE CONCUR: